**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| John Phipps, individually, and as Guardian ad litem for Montgomery Phipps; and Dina Phipps,<br><br>        Plaintiffs,<br>  vs.<br><br>Clark County School District; Lachelle Dean James; J. Schell; D. Couthern; and M. Caldwell,<br><br>        Defendants. | Case No.: 2:13-cv-00002-GMN-PAL<br><br>**ORDER** |

This § 1983 action is brought on behalf of Montgomery Phipps ("Montgomery"), a minor child, and by Montgomery's parents, John and Dina Phipps (collectively, "Plaintiffs"). Pending before the Court is the Motion to Dismiss (ECF No. 44) filed by Defendants Darnell Couthern, Matthew Caldwell, and Jeffrey Schell (collectively, "the Officer Defendants"), and Clark County School District ("CCSD") (collectively, "the CCSD Defendants"). Plaintiffs filed a Response (ECF No. 45), and the CCSD Defendants filed a Reply (ECF No. 46). With leave of the Court, Plaintiffs also filed a Supplement (ECF No. 50).

**I.     BACKGROUND**

Montgomery has an identified disability known as autism, can neither speak nor write, and is "essentially non-verbal." (Am. Compl., 5:¶14, ECF No. 36.) "In the spring of 2010, [Montgomery] began attending Variety School, a school for disabled students within the Clark County School District." (*Id*. at 5:¶15.) "In August of 2011, [Montgomery] began the school year at Variety School with various 'substitute' teachers," and "[a]s the school year went on, [John and Dina] noticed random rug burns and bruises on Montgomery." (*Id*. at 5:¶¶16-17.)

"Plaintiffs complained to the principal of the school about this," and "were told that the principal had investigated the matter and found that Montgomery caused his own rug burns and bruises and assured [John and Dina] that the teacher(s) had nothing to do with this." (*Id*. at 5:¶17.) Plaintiffs were not informed when, at some point in 2012, and prior to March 2, 2012, "another parent from the same classroom alleged that they suspected abuse in the classroom," and "contacted CCSD personnel, placing the CCSD on notice." (*Id*. at 5:¶18, 6:¶19.)

"Specifically, on or about March 2, 2012, Sgt. D. Couthern, a supervisor within the CCSD, was made aware of specific abuse allegations regarding students in a classroom at Variety School," who "were non-verbal autistic children." (*Id*. at 6:¶19.) No parents were notified at that time, and instead, "Couthern instructed CCSD personnel M. Caldwell and J. Schell to install hidden cameras within the classroom," which "were monitored at an off-site location via internet live feed." (*Id*. at 6:¶¶20-22.)

As shown on video, on March 6, 2012, Montgomery was "subjected to torture and abuse" by Lachelle James "and a substitute teacher," as witnessed by "Doe Classroom Teachers" within the classroom, and by "M. Caldwell and/or J. Schell" via video camera. (*Id*. at 6:¶¶22-24, 7.) Defendant James was arrested the same day for child abuse and battery. (*Id*. at Ex. 1.) In the Supplement, Plaintiffs also allege abuse of Montgomery's older brother, John Weston Phipps, who is also "a disabled nonverbal autistic child." (ECF No. 50.)

Plaintiffs filed suit in state court on November 6, 2012, alleging causes of action against CCSD, Lachelle James, and the Variety School. (Compl., Ex. A to Notice of Removal, ECF No. 1.) CCSD and the Variety School removed the action to this Court on January 2, 2013. (*Id*.) Defendant James was not served until June 6, 2013. (Aff. of Service, ECF No. 28.) On August 20, 2013, Plaintiffs filed an Amended Complaint (ECF No. 36) omitting the Variety School and naming the Officer Defendants as parties. On September 18, 2013, the CCSD Defendants filed the instant Motion to Dismiss (ECF No. 44).

1  According to Plaintiffs' Amended Complaint, "[t]his is a civil rights action . . . against
2  CCSD pursuant to Title 42 U.S.C. § 1983 for deprivation of Montgomery Phipps'
3  Constitutional civil rights and his Fourteenth Amendment interests including substantive due
4  process rights and Fourth Amendment rights." (Am. Compl., 9:¶46.)  Plaintiffs allege that
5  "CCSD had actual or constructive knowledge during Montgomery Phipps' enrollment that
6  teachers and agents of CCSD . . . were engaged in conduct that posed a foreseeable, pervasive
7  and unreasonable risk of constitutional injury to Montgomery Phipps." (*Id*. at 9:¶47.)

8  Plaintiffs allege that "[t]he Fourteenth Amendment liberty interest includes the right to
9  be free from unnecessary and unreasonable force or intentional, reckless or deliberately
10 indifferent or oppressive conduct that causes emotional or psychological harm," and that
11 "[e]xcessive force by a teacher, official, aide, or police against a student violates the student's
12 constitutional rights." (*Id*. at 9:¶¶48-49.)  Accordingly, Plaintiffs allege that, "[w]hether
13 reviewed in the context of reasonableness or 'shock the conscience,' the actions hereinabove
14 described violated Montgomery Phipps' constitutional rights." (*Id*. at 9:¶50.)

15 Plaintiffs allege that "CCSD had actual and/or constructive notice and acted with
16 deliberate indifference when":

17 (1) its teachers and/or aides failed to intervene in the abuse and allowed it to continue;
18 (2) its surveillance personnel watched the abuse take place but failed to intervene and allowed it to continue;
19 (3) it failed to advise the parents of students in the class that a parent had alleged and/or suspected abuse in the classroom so that the parents could make a decision for themselves about returning their student to said classroom;
20 
21 (4) it failed to ensure that in watching the surveillance of the classroom that if abuse actually happened, it would be able to be stopped immediately; and
22 
23 (5) it failed to perform an investigation without surveillance to determine if abuse was happening in the classroom as the surveillance would only look towards what was going on at the time and not in the past.

24 (*Id*. at 9-10:¶51.)

25 Specifically, Plaintiffs allege that "CCSD was deliberately indifferent to, permitted, and

tolerated its teachers and/or employees' pattern and practice of unjustified, unreasonable and inappropriate use of physical restraint, force, torture, and intimidation against special-needs children, and especially Montgomery Phipps, which was atrocious as well as shocking to the conscience." (*Id*. at 10:¶52.)

Plaintiffs allege "[t]here is no qualified immunity for any of the officials, teachers, aides, and police because the conduct herein described violates 'clearly established constitutional or statutory rights of which a reasonable person would have known.'" (*Id*. at 9:¶43.)

## II.   LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegation are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  "However, material which is properly submitted as part of the complaint may be considered." *Id*.  Similarly, "documents whose contents are alleged in a

1  complaint and whose authenticity no party questions, but which are not physically attached to
2  the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without
3  converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14
4  F.3d 449, 454 (9th Cir. 1994). On a motion to dismiss, a court may also take judicial notice of
5  "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).
6  Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is
7  converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

### III.   DISCUSSION

The CCSD Defendants argue that "Plaintiffs' § 1983 claim against CCSD lacks factual allegations to support the existence of a policy leading to constitutional violations," that "Plaintiffs' claims against the Officer Defendants fail because the facts Plaintiffs have alleged do not demonstrate that the Officers acted with deliberate indifference as a matter of law," that "the Officer Defendants are immune from suit under the doctrine of qualified immunity, and their actions are immune from tort liability under Nevada's discretionary-act immunity statute."[1] (Mot. Dismiss, 4:5-10, ECF No. 44.) On these grounds, the CCSD Defendants request dismissal of Plaintiffs' claims against the CCSD Defendants. (*Id.*)

Plaintiffs clarify in their Response that the § 1983 claims against Defendants are not being alleged on behalf of John and Dina Phipps, only Montgomery Phipps. (Response to Mot. Dismiss, 18:15-16 ("The parents do not have, and are not alleging, Section 1983 claims or constitutional claims in this matter.").)

### A.   Plaintiffs' § 1983 claims

"Traditionally, the requirements for relief under section 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2)

---

[1] The parties recognize that Nevada's discretionary-act immunity statute, Nev. Rev. Stat. § 41.032, does not apply to immunize Defendants from Plaintiffs' § 1983 claims. (Response to Mot. to Dismiss, 16, ECF No. 45; Reply to Mot. to Dismiss, 11 n.6, ECF No. 46.)

proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

"Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982).  The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818.

"Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978).  "Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id*. at 690–91.

In *Monell*, the Supreme Court affirmed that "a municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id*. at 691.  However, "this protection against liability does not encompass immunity from suit," and "municipalities do not enjoy immunity from suit – either absolute or qualified – under § 1983." *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993).  "In short, a municipality can be sued under § 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury." *Id*.

Analyzing whether "a federal court may apply a 'heightened pleading standard' more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure – in civil rights cases alleging municipal liability under . . . 42 U.S.C. § 1983," the Supreme Court held that "it may not." *Id*. at 164.  Quoting the Latin phrase, "[e]xpressio unius est exclusio alterius," the Supreme Court concluded that "the Federal Rules do address in Rule 9(b) the question of the need for greater particularity in pleading certain actions, but do not include among the enumerated actions any reference to complaints alleging municipal liability under § 1983." *Id*. at 168.

Defendants have not filed a response to Plaintiffs' Supplement (ECF No. 50); however the Court heard oral arguments of the parties at a hearing on April 22, 2014. (Mins. of Proceedings, ECF No. 52.)

Here, the Court finds that Plaintiffs have satisfied the applicable pleadings standards. Based upon the parties' briefs and the parties' statements on the record at the hearing, the Court finds that Plaintiffs have alleged enough facts to state a claim to relief under § 1983 that is plausible on its face, and not merely conceivable.

Specifically, Plaintiffs' factual allegations are sufficient to allow the Court to draw the reasonable inference that, under § 1983, CCSD supported a policy or custom leading to constitutional violations against Montgomery Phipps, and that the Officer Defendants acted unlawfully in ways amounting to violations of Montgomery's constitutional rights.

Also, as to qualified immunity, the question of whether the Officer Defendants may be shielded from liability for civil damages in performing discretionary functions is dependent on whether their conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known.  The Court finds that Plaintiffs' factual allegations are sufficient to allow the Court to draw the reasonable inference that the Officer Defendants' conduct violated clearly established statutory or constitutional rights of which a reasonable

person would have known, and that therefore qualified immunity does not apply.

Accordingly, Defendants' Motion to Dismiss (ECF No. 44) will be denied as to these claims.

### B. Plaintiffs' state law claims

#### 1. Filial Consortium

Plaintiffs allege claims for damages based upon the tort cause of action for loss of filial consortium, on behalf of John and Dina Phipps. (Am. Compl., 12:¶¶69-72; Response to Mot. Dismiss, 18:17-18.)  However, "Nevada does not recognize a claim for loss of parental consortium." *Motenko v. MGM Dist., Inc.*, 921 P.2d 933, 934 (Nev. 1996), *overruled on other grounds by Gen. Motors Corp. v. Eighth Judicial Dist. Ct*, 134 P.3d 111 (Nev. 2006) (en banc).

Defendants argue that this cause of action should be dismissed because "Plaintiffs have not alleged any facts to support that the parents of Montgomery Phipps suffered any loss of consortium based on the incident of abuse alleged in the Amended Complaint," because "parents are not entitled to recover damages for constitutional violations directed at their children," and because Plaintiffs "fail to allege any facts suggesting that [John and Dina Phipps'] relationship with their son has been in any way affected as a result of the March 6, 2012 incident described in the Amended Complaint." (Mot. Dismiss, 13:13-16, 20-21.)

Plaintiffs respond that this cause of action is based upon state law, Nev. Rev. Stat. § 41.130, and that "[i]f the CCSD is found liable as the employer of James, the parents have a justiciable claim for their damages." (Response to Mot. Dismiss, 18:17-19.)

Section 41.130 of Nevada Revised Statutes provides for liability for personal injury "whenever any person shall suffer personal injury by wrongful act, neglect or default of another . . . ; and where the person causing the injury is employed by another person or corporation responsible for the conduct of the person causing the injury, that other person or corporation so responsible is liable to the person injured for damages." Nev. Rev. Stat. § 41.130.

Plaintiffs provide no legal authority supporting their argument that a cause of action for filial consortium under Nev. Rev. Stat. § 41.130 may be maintained by John and Dina Phipps as parents of Montgomery Phipps, and the Court finds none.  Accordingly, the Court will dismiss this cause of action with prejudice.

### 2.  Battery under a theory of *respondeat superior*

Plaintiffs allege a cause of action for battery against Defendant James. (Am. Compl., 11.)  Within the section for this cause of action, Plaintiffs include allegations that "Defendant James was an employee of the CCSD," that "Defendant James committed the tort of battery whilst she was in the course and scope of her employment at the CCSD," and that "CCSD is liable for same pursuant to NRS 41.130." (*Id*. at 11:¶¶58-60.)

As explained above, section 41.130 provides for liability for personal injury "whenever any person shall suffer personal injury by wrongful act, neglect or default of another . . . ; and where the person causing the injury is employed by another person or corporation responsible for the conduct of the person causing the injury, that other person or corporation so responsible is liable to the person injured for damages." Nev. Rev. Stat. § 41.130.

In their motion, Defendants do not argue for dismissal of this cause of action.  This omission is possibly explained by Defendants' mistaken assertion that "Plaintiffs have not asserted any tort claims against . . . CCSD." (*See* Mot. Dismiss, 12:16-17.)  In the Reply, Defendants appear to attempt argument for dismissal of this cause of action, beginning with their assertion that "CCSD cannot be held vicariously liable when the conduct alleged was the truly independent acts of its employees and not in furtherance of their employment." (*Id*. at 12:16-18.)  However, to the extent that Defendants' intent was to argue for dismissal of this cause of action, the Court declines to entertain argument on this issue, as it was not first raised in Defendants' Motion to Dismiss.

/ / /

      **3. Damages claims**

Defendants move for dismissal of Plaintiffs' claims for punitive damages and damages under section 41.1395 of Nevada Revised Statutes. Plaintiffs' claims for punitive damages and for double damages under section 41.1395 of Nevada Revised Statutes are premised on their recovery against CCSD under section 41.130, and are not separate causes of action. Although the Court recognizes Defendants' arguments as to the limited recovery available to Plaintiffs under section 41.035 of Nevada Revised Statutes, the Court finds that this issue is not appropriately decided in this Order.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Motion to Dismiss (ECF No. 44) is **GRANTED in part, and DENIED in part**, as follows. Defendants' motion is granted as to Plaintiffs' claims for filial consortium, and is otherwise denied. Plaintiffs' claims for filial consortium are dismissed with prejudice.

**DATED** this 23rd day of April, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Court