# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| John Phipps, as Guardian ad litem for M.P., a minor child; and Dina Phipps,   )<br>  )<br>  ) | Case No.: 2:13-cv-0002-GMN-PAL |
|          Plaintiffs,   )<br>    vs.          ) | **ORDER** |
|   )<br>Clark County School District; Lachelle James; )<br>J. Schell; D. Couthen; and M. Caldwell,   )<br>  )<br>      Defendants.   )<br>  )<br>  ) | |

This § 1983 action is brought on behalf of M.P., a minor child, by M.P.'s parents, John and Dina Phipps (collectively, "Plaintiffs"). Pending before the Court is Plaintiffs' Motion for Summary Judgment. (ECF No. 124). Defendants Sergeant Darnell Couthen, Detective Matthew Caldwell, and Detective Jeffrey Schell (collectively, "the Officer Defendants") as well as Defendant Clark County School District ("CCSD"), filed a response in opposition, (ECF No. 131), and Plaintiffs replied, (ECF No. 135).

Also before the Court is Defendants' Motion for Summary Judgment. (ECF No. 125). Plaintiffs filed a response in opposition, (ECF No. 130), and Defendants replied, (ECF No. 136). For the reasons set forth herein, the Court will grant each of the Motions in part and deny them in part.

## I.     BACKGROUND

This case centers upon allegations that Defendants violated M.P.'s constitutional rights by facilitating several acts of physical abuse against him. (Am. Compl., ECF No. 36).

At the times relevant to this action, M.P. was a student at Variety School, an institution operated by CCSD which specializes in educating children with learning disabilities. (Defs.'

Mot. p. 2 n.1, ECF No. 125). M.P. suffers from autism, and as a result of this condition he can neither speak nor write. (Am. Compl. ¶ 14). During the 2011-2012 academic year, M.P. was assigned to Classroom 25 at Variety School, which included approximately six other non-verbal students. (Harris Depo. 6:8-10, ECF No. 124-1); (Coleman Depo. 23:2-3, ECF. No. 124-3).

On January 18, 2012, the parents of D.M., another student assigned to Classroom 25, contacted the CCSD Police Department ("CCSD PD"), claiming that D.M. had arrived home from school with bruises on multiple occasions. (Chin Depo. 4:21-24, ECF No. 124-5). During his investigation of this claim, Officer Christopher Chin of the CCSD PD could not locate any records kept by the Variety School staff which offered insight into how D.M. may have received bruises while at school. (*Id.* 6:18-7:9).

On Friday, March 2, 2012, Chief James Ketsaa of the CCSD PD was informed by the CCSD Superintendent's Office that an advocate for one of the students of Classroom 25 had expressed concerns about recurring student injuries. (Ketsaa Depo. 17:1-15, ECF No. 124-10). That evening, the Officer Defendants installed hidden surveillance cameras in Classroom 25. (Couthen Depo. 17:13-19:3, ECF No. 124-12). The cameras were equipped both to transmit a live feed to a viewing location several miles away and also to record video for future review. (*Id.* at 19:7-10).

Though the Officer Defendants planned to have Detective Caldwell watch the live feed from the cameras on Monday, March 5, 2012, Detective Caldwell was ill on that day and did not attend work. (Couthen Depo. 11:25-12:2, Ex. W to Defs.' Mot.). As a result, none of the officers viewed the feed from the cameras until Tuesday, March 6, 2012. (Caldwell Depo. 7:4-15, ECF No. 124-14).

While viewing the live feed that morning, Detective Caldwell witnessed an incident in which Defendant Lachelle James, a classroom aide, repeatedly "dragg[ed]" M.P. to the ground

1   and "pin[ned]" him to the floor with her knees and elbows. (Decl. of Arrest p. 1, ECF 124-2).

2   During this incident, Detective Caldwell noted that M.P. "did not appear to be resisting or

3   combative," but did look as if he was crying. (*Id.* pp. 1-2).  At one point, M.P. "crawl[ed] under

4   a table" only to be dragged back to the center of the room by his wrist by Defendant James. (*Id.*

5   p. 1).

6       A few minutes later, Detective Caldwell witnessed Defendant James, without any

7   apparent provocation, repeatedly shove a different student who was also not resisting or being

8   combative. (*Id.* p. 2).  During this incident, Defendant James pushed the other student directly

9   into M.P. (*Id.*).

10       After viewing this incident via the live feed, Detective Caldwell contacted Sergeant

11   Couthen and Detective Schell, who then viewed the recording of the incident. (Schell Depo.

12   12:17-24).  After conferring about the appropriate course of action, the detectives drove to

13   Variety School and discussed the established procedures for physically restraining students

14   with the school's assistant principal and special education facilitator. (Decl. of Arrest p. 2).

15   Upon concluding that Defendant James' actions were not in accordance with the school's

16   official restraint procedures, the detectives placed Defendant James under arrest. (*Id.*).

17       After the arrest, the detectives reviewed all of the footage recorded by the surveillance

18   cameras on March 5 and 6, 2012.  Plaintiffs allege that, in addition to the incident witnessed

19   live by Detective Caldwell, the footage shows that Defendant James committed three additional

20   batteries upon M.P. (Pls.' Mot. ¶¶ 32-34, 44-45).  One of these alleged batteries took place

21   approximately two hours after Detective Caldwell initially viewed the incident over the live

22   feed. (*Id.* at ¶¶ 44-45).  Defendant James subsequently pled guilty to two gross misdemeanor

23   counts of child abuse, neglect, or endangerment. (Defs.' Mot 2:7-9).

24       The parties agree that the nature of the students' disabilities in Classroom 25 often

25   caused them to exhibit behaviors which required the use of restraint techniques. (Pls.' Mot. ¶

57); (Defs.' Mot. ¶ 16).  Similarly, the parties do not dispute that before the incident in question, Defendant James underwent Crisis Prevention Intervention Training ("CPI Training"), which addressed how and when to physically restrain students in order to prevent them from harming themselves or others. (Pls.' Mot. ¶ 58); (Defs.' Mot. ¶ 20).  It is also undisputed that some of the staff members assigned to Classroom 25 on March 6, 2012, had not undergone CPI Training, (Defs.' Mot. ¶ 6), and that none of the staff members in Classroom 25 on March 5, 2012, reported Defendant James for child abuse, (Pl.'s Mot. ¶ 62).

Based upon these facts and allegations, the Amended Complaint sets forth: (1) a claim for violations of 42 U.S.C. § 1983 against CCSD and the Officer Defendants; (2) a claim of battery against CCSD and Defendant James; (3) a request for punitive damages; and (4) a request for enhanced damages pursuant Nev. Rev. Stat. § 41.1395. (Am. Compl. ¶¶ 45-75).

In the instant Motions, Plaintiffs, CCSD, and the Officer Defendants each request that summary judgment be issued in their favor as to all of the claims at issue.

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103-04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported

1    claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

2        In determining summary judgment, a court applies a burden-shifting analysis. "When

3    the party moving for summary judgment would bear the burden of proof at trial, it must come

4    forward with evidence which would entitle it to a directed verdict if the evidence went

5    uncontroverted at trial. In such a case, the moving party has the initial burden of establishing

6    the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

7    *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In

8    contrast, when the nonmoving party bears the burden of proving the claim or defense, the

9    moving party can meet its burden in two ways: (1) by presenting evidence to negate an

10   essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

11   party failed to make a showing sufficient to establish an element essential to that party's case

12   on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323-

13   24. If the moving party fails to meet its initial burden, summary judgment must be denied and

14   the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*,

15   398 U.S. 144, 159-60 (1970).

16       If the moving party satisfies its initial burden, the burden then shifts to the opposing

17   party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v.*

18   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute,

19   the opposing party need not establish a material issue of fact conclusively in its favor. It is

20   sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

21   parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

22   *Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid

23   summary judgment by relying solely on conclusory allegations that are unsupported by factual

24   data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go

25   beyond the assertions and allegations of the pleadings and set forth specific facts by producing

1  competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

2      At summary judgment, a court's function is not to weigh the evidence and determine the

3  truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

4  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

5  in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is

6  not significantly probative, summary judgment may be granted. *See id.* at 249-50.

7  **III.   DISCUSSION**

8      In assessing the pending Motions, the Court will address: (1) Plaintiffs' § 1983 claim

9  against the Officer Defendants; (2) Plaintiffs' § 1983 claim against CCSD; (3) Plaintiffs'

10 battery claim against CCSD; (4) punitive damages; and (5) enhanced damages pursuant to Nev.

11 Rev. Stat. § 41.1395.

12     **A. Section 1983 Claim Against the Officer Defendants**

13     To successfully bring a § 1983 claim, a plaintiff must show (1) a violation of a

14 constitutional right and (2) that the alleged violation was committed by a person acting under

15 color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).  However, § 1983 "is not itself a

16 source of substantive rights, but merely provides a method for vindicating federal rights

17 elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

18     The Fourteenth Amendment protects against the government's interference with "an

19 individual's bodily integrity." *P.B. v. Koch*, 96 F.3d 1298, 1303 (9th Cir. 1996).  "Government

20 officials are, of course, justified in using force . . . in carrying out legitimate governmental

21 functions.  But, when the force is excessive, or used without justification or for malicious

22 reasons, there is a violation of substantive due process." *Id.*  Furthermore, it is well established

23 that a public school official's act of assaulting a student without any justification for the use of

24 force gives rise to a cause of action under the Fourteenth Amendment. *See id.* at 1304.

25     Plaintiffs assert that the Officer Defendants should be held liable pursuant to the

"enhanced danger doctrine." (Pls.' Mot. 18:14-20:6).  Under this doctrine, liability may be imposed against a state officer who places a person in peril with deliberate indifference to their safety. *See, e.g.*, *Penilla v. City of Huntington Park*, 115 F.3d 707, 709 (9th Cir. 1997); *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992).  However, a state actor cannot be liable pursuant to this doctrine unless they made an affirmative action which created or increased the danger faced by the victim. *See, e.g.*, *Campbell v. State of Washington Dep't of Soc. & Health Servs.*, 671 F.3d 837, 846 (9th Cir. 2011); *Johnson v. City of Seattle*, 474 F.3d 634, 639 (9th Cir. 2007).

In this case, Plaintiffs assert that the Officer Defendants should be held liable pursuant to the enhanced danger doctrine because they failed to monitor the live feed on March 5, 2012, or take immediate action to intervene when they witnessed Defendant James aggressively dragging and pinning M.P. on March 6, 2012.  Plaintiffs argue that if the Officer Defendants had arrested Defendant James more quickly, several batteries upon M.P. would have been prevented.

Though Plaintiffs may be correct in observing that earlier intervention could have prevented some of Defendant James' aggressive physical restraints upon M.P., this observation in and of itself is insufficient to establish liability against the Officer Defendants.  Indeed, prior to arresting Defendant James, the Officer Defendants had no interaction with M.P. or the staff of Classroom 25.  As such, the Officer Defendants cannot be said to have taken any affirmative action to place M.P. in harm's way.  Plaintiffs have provided no evidence showing that any of the Officer Defendants' actions *created* or *increased* the danger that M.P. faced.  Instead, Plaintiffs' evidence shows only a possibility that the Officer Defendants could have more quickly resolved a dangerous situation they played no part in creating.  Accordingly, Plaintiffs have failed to raise a genuine issue of material fact that the Officer Defendants performed a requisite affirmative act which facilitated a violation of M.P.'s rights, and summary judgment

will thus be granted in favor of the Officer Defendants. *See Whitley v. Hanna*, 726 F.3d 631, 643 (5th Cir. 2013) ("[A]lthough we do not deny the possibility that Hanna could have conducted the investigation differently, perhaps even gathering enough evidence to make an arrest in less than the two weeks it took him, Hanna's failure to immediately end the abuse does not make him deliberately indifferent.").

## B. Section 1983 Claim Against CCSD

In *Monell v. New York City Department of Social Services* the Supreme Court held that municipalities can be sued directly under § 1983 for violations of constitutional rights. *See* 436 U.S. 658, 690 (1978). However, a municipal entity may be held liable under § 1983 only upon a showing that it had a "deliberate policy, custom, or practice that was the moving force behind the constitutional violation." *Galen v. County of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007). Additionally, a municipal entity's failure to train its employees gives rise to a § 1983 claim only when that failure arises out of deliberate indifference to individuals' constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

In this case, Plaintiffs appear to assert two distinct legal theories which would impose liability upon CCSD pursuant to § 1983.[1] First, Plaintiffs assert that CCSD should be liable for Defendant James' actions because CCSD trained her to perform aggressive physical restraints like the one for which she was arrested on March 6, 2012. Alternatively, Plaintiffs argue that even if Defendant James was not directly trained to perform restraints in that manner, CCSD was deliberately indifferent to her doing so.

As to the first theory of liability, Plaintiffs point out that Defendant James testified during her deposition that her physical restraints upon M.P. on March 6, 2012, fully complied with the CCSD's CPI Training. (James Depo. 12:10-21, ECF No. 124-3). In fact, Defendant

---

[1] Notably, CCSD does not dispute that Defendant James' actions violated M.P.'s constitutional rights. Instead, CCSD argues only that it cannot be held liable for Defendant James' actions pursuant to *Monell*.

James stated that those restraints were performed using the same methods that she had been using to restrain students at Variety School since 2007. (*Id.* 12:18-22).

For its part, CCSD has presented evidence indicating that Defendant James' actions were inconsistent with her CPI Training.  For example, after viewing the surveillance footage, Tyler Hall, Variety School's principal, stated that James' physical interaction with M.P. was not in accordance with the training she had received. (Hall Depo. 83:9-21, Ex. DD to Defs.' Reply, ECF No. 136).  Similarly, during his deposition, Assistant Principal Jason Fico stated that Defendant James' actions were not appropriate crisis prevention intervention techniques. (Fico Depo. 73:12-22, Ex. EE to Defs.' Reply).

Viewing the evidentiary record as a whole, it is apparent that a dispute exists as to whether Defendant James was acting in accordance with the customs, practices, and procedures of CCSD during her interaction with M.P. on March 6, 2012.  Sufficient evidence exists for a reasonable jury to find either that Defendant James restrained M.P. in the manner she was trained, or that Defendant James' actions were in defiance of CCSD's training and policies.  Accordingly, the Court finds that a genuine dispute of fact exists, and both Motions for Summary Judgment will be denied as to this theory of liability.

Plaintiffs also argue that even if Defendant James' actions violated CCSD's official physical restraint policies, CCSD's unofficial practices were nonetheless deliberately indifferent to M.P.'s constitutional rights.  Plaintiffs have submitted evidence purporting to show CCSD's deliberate indifference in multiple ways.  First, Plaintiffs point out that Defendant James testified that teachers, staff members, and administrators at Variety School witnessed her restraining students in the exact manner she restrained M.P. on March 6, 2012, and had never physically intervened or verbally corrected her. (James Depo. 12:13-13:20, ECF No. 124-3).  Plaintiffs have also submitted evidence purporting to show that CCSD failed to maintain statutorily required records documenting incidents in which disabled students were

1  physically restrained. *Compare* (Amaya Depo. pp. 25-26, ECF No. 124-4) (stating that
2  Defendant James restrained M.P. "several times a day") *with* (Loehr Depo. 54:2-23, ECF No.
3  124-17) (indicating that only two instances of physical restraints upon M.P. were properly
4  documented); *see also* Nev. Rev. Stat. Ann. § 388.5275 (requiring that reports be created and
5  maintained to document instances in which disabled students are physically restrained).
6  Finally, Plaintiffs point out that, despite the fact that the behavior of the students in Classroom
7  25 often necessitated the use of physical restraint techniques, CCSD did not require that every
8  staff member assigned to the classroom undergo CPI Training. (Hall Depo. 5:1-15, ECF No.
9  124-18).
10      CCSD refutes these lines of reasoning individually, asserting that: (1) several witnesses
11  testified that they had not previously seen Defendant James physically restrain students in the
12  manner she restrained M.P. on March 6, 2012, *see, e.g.*, (Amaya Depo. 38:2-11); (2) the
13  alleged failure to fill out the required forms amounts only to negligence rather than deliberate
14  indifference, (Defs.' Reply, 11:6-12:8); and (3) declining to require that every staff member
15  assigned to Classroom 25 undergo CPI training did not ignore a risk to students' rights, because
16  all staff members were still required to report instances of child abuse and were instructed to
17  generally avoid physical contact with students, (Wooden Depo. 11:14-17, Ex. Z to Defs.'
18  Mot.).  However, it is not Plaintiffs' burden to demonstrate that a single witness' testimony,
19  absent document, or training practice proves deliberate indifference.  Nor would a jury's
20  decision upon the issue need to rest upon only a single piece of evidence.  Plaintiffs have
21  submitted several pieces of evidence, which considered together in the most favorable light,
22  demonstrate that CCSD had a policy of deliberate indifference which facilitated the
23  unwarranted use of force upon students in Classroom 25, including M.P.  As a result, the Court
24  finds that Plaintiffs have satisfied their burden by raising a genuine issue of material fact, and
25  Defendants' Motion for Summary Judgment will be denied.  Likewise, as Plaintiffs' evidence is

disputed by that of Defendants, Plaintiffs' Motion will be denied as to the issue of whether CCSD had an unofficial policy, custom, or practice which was deliberately indifferent to the deprivation of M.P.'s constitutional rights.

### C. Battery Claim Against CCSD

CCSD does not dispute that Defendant James committed battery upon M.P. on the dates in question, but argues instead that it cannot be held liable for Defendant James' conduct pursuant to Nev. Rev. Stat. § 41.745(1). This section "promulgates three distinct circumstances in which an employer is liable for an employee's intentional tort: (1) the employee's act was not a 'truly independent venture,' (2) the employee acted 'in the course of the very task assigned,' or (3) the employee's act was 'reasonably foreseeable under the facts and circumstances of the case considering the nature and scope of his or her employment.' " *Anderson v. Mandalay Corp.*, 358 P.3d 242, 247 (Nev. 2015) (quoting Nev. Rev. Stat. § 41.745(1)).

In the instant case, Plaintiffs have sufficiently shown that Defendant James acted "in the course of the very task assigned" by CCSD when she violently restrained M.P. Defendant James was assigned to Classroom 25 as a classroom aide, and was expected to perform appropriate physical restraints when necessary to prevent students from injuring themselves or others. (Schell Depo. 10:14-21. ECF No. 124-13); (Nonviolent Crisis Intervention Participant Workbook pp. CCSD-PHIPPS000732, Ex. G-1 to Defs.' Resp.).

In *Prell Hotel Corp. v. Antonacci*, the Nevada Supreme Court held that a hotel and casino was liable when one of its employees, a card dealer, assaulted a guest who was playing a game of "21." 469 P.2d 399, 400 (Nev. 1970). Specifically, the court held that because the employee hit the guest in the midst of the game and "did not leave his position behind the 21 table to accomplish the assault and battery," the tort occurred within the scope of the employee's assigned tasks. *Id.* Similarly, in this case, Defendant James performed her

1  aggressive restraints upon M.P. while overseeing the students in Classroom 25.  In the midst of

2  her activities as a classroom aide, Defendant James repeatedly "dragg[ed]" M.P. to the ground

3  and "pin[ned]" him to the floor with her knees and elbows, in the very classroom in which she

4  was assigned. (Decl. of Arrest p. 1, ECF 124-2).  Thus, just as the dealer in *Prell Hotel* was

5  found to be acting within the scope of his assigned tasks during his assault upon the casino's

6  guest, the Court finds that Defendant James was acting within the course of the tasks assigned

7  to her when she forcefully restrained M.P. in the classroom.  Accordingly, the Court finds that

8  Nev. Rev. Stat. § 41.745 does not protect CCSD from liability arising from Plaintiffs' battery

9  claim against Defendant James.[2]  Therefore, Plaintiffs' Motion for Summary Judgment will be

10  granted as to the issue of vicarious liability.

11      **D. Punitive Damages**

12      Plaintiffs seek an award of punitive damages against CCSD based upon their § 1983

13  claim.  However, it is well established that punitive damages may not be awarded for § 1983

14  claims against municipal entities, because municipal entities are unable to form the requisite

15  intent, and because such damages would serve to punish taxpayers. *City of Newport v. Fact*

16  *Concerts, Inc.*, 453 U.S. 247, 268-71 (1981); *Herrera v. Las Vegas Metro. Police Dep't*, 298 F.

17  Supp. 2d 1043, 1055 (D. Nev. 2004).  Accordingly, CCSD's Motion for Summary Judgment

18  will be granted as to Plaintiffs' request for punitive damages.[3]

19  ────────────────

20  [2] Though it is apparent from the record that Defendant James' conduct occurred within the course of her
assigned tasks, Plaintiffs have not yet shown that the elements of their underlying battery claim are satisfied.  In
21  regard to the underlying battery claim, Plaintiffs merely state, "Lachelle committed seven separate and distinct
batteries on [M.P.].  They occur on the videotapes at the following times . . . .  There is no question about this.
22  Lachelle is liable.  The issue is respondeat superior." (Pls.' Mot 20:8-13).  While Plaintiffs may be confident that
the video evidence definitively shows that Defendant James committed batteries upon M.P., they failed to submit
23  this evidence in support of their Motion.  Thus, Plaintiffs' battery claim remains pending before the Court.

24  [3] Though the subject is not discussed explicitly in Defendants' Motion, the Court also notes that, as a matter of
law, Plaintiffs may not recover punitive damages against CCSD based on their battery claim. *See* Nev. Rev. Stat.
25  § 41.035 (providing that an award for damages based on a tort claim against a subdivision of the state "may not
include any amount as exemplary or punitive damages"); *Peterson v. Miranda*, 991 F. Supp. 2d 1109, 1120 (D.
Nev. 2014).

**E. Enhanced Damages Pursuant to Nev. Rev. Stat. § 41.1395**

In their Complaint, Plaintiffs request that any damages they are awarded be enhanced pursuant to Nev. Rev. Stat. § 41.1395, which provides that an award for actual damages be doubled in some instances when the victim of a personal injury is an "older or vulnerable person." However, Plaintiffs concede that this provision is inapplicable to CCSD, because a state actor is not a "person" as the term is used in the statute. (Pls.' Resp. 24:16-20); *cf. Simonian v. Univ. & Cmty. Coll. Sys. of Nevada*, 128 P.3d 1057, 1062 (Nev. 2006) (holding that state entities are not "persons," and are therefore not subject to liability under Nevada's False Claims Act). Accordingly, Defendants' Motion for Summary Judgment will be granted as to Plaintiffs' request for enhanced damages pursuant to Nev. Rev. Stat. § 41.1395.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment, (ECF No. 124), and Defendants' Motion for Summary Judgment, (ECF No. 125), are **GRANTED in part and DENIED in part**, pursuant to the foregoing.

**IT IS FURTHER ORDERED** that summary judgment is **GRANTED** in favor of Defendants Schell, Couthen, and Caldwell as to all of the claims against them.

**IT IS FURTHER ORDERED** that summary judgment is **GRANTED** in favor of Defendant Clark County School District as to Plaintiffs' requests for punitive damages and enhanced damages pursuant to Nev. Rev. Stat. § 41.1395.

**IT IS FURTHER ORDERED** that summary judgment is **GRANTED** in favor of Plaintiffs as to the issue of Defendant Clark County School District's vicarious liability in regard to the battery claim asserted against Defendant James.

///

///

///

1    **IT IS FURTHER ORDERED** that this case is **REFERRED** to Magistrate Judge Peggy

2  Leen for a settlement conference pursuant to Local Rule 16-5.

3

4    **DATED** this ___22___ day of February 2016.

5

6    _____

7    Gloria M. Navarro, Chief Judge
     United States District Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25